IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher Dean Hornsby,<br><br>                        Plaintiff,<br><br>v.<br><br>Debroah Hipp,<br><br>                        Defendant. | C/A No. 0:11-1749-RBH-PJG<br><br><br>**ORDER AND<br>REPORT AND RECOMMENDATION** |

The plaintiff, Christopher Dean Hornsby ("Hornsby"), a self-represented pretrial detainee, filed this civil rights action pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 46.) Pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), the court advised Hornsby of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendant's motion. (ECF No. 47.) Hornsby filed a response in opposition. (ECF No. 53.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

## BACKGROUND

Per Hornsby's Complaint, he was arrested on June 9, 2011 and incarcerated in J. Reuben Long Detention Center ("JRLDC") in Horry County, South Carolina. (Compl., ECF No. 1 at 4.) Liberally construed, Hornsby's principal allegations are that since his arrest the medical staff has been deliberately indifferent to his medical condition and has violated his Sixth and Eighth

Amendment rights.[1]  (Compl., ECF No. 1 at 5.)  Hornsby alleges that the day prior to his arrest he was treated in the emergency room ("ER") of Grand Strand Regional Medical Center and referred to a specialist at Little River Medical Center for further diagnosis due to "a large possibility of muscle and/or tendon damage to his wrist and hand."[2]  (Id.)  Upon his arrest, he "immediately advised the medical staff of his injury and need to see a specialist" but was not seen by medical personnel until "more than two weeks later."  (Id.)  Hornsby alleges that he was improperly diagnosed with carpal tunnel syndrome by the defendant without a "proper medical exam" and "from a distance of greater than [eight] feet" without the defendant's having received or requested his medical records from the hospital.  (Id.)  According to Hornsby, he has "suffered needlessly" due to the "deliberate indifference" of the defendant (id.), and for this seeks injunctive relief in addition to damages, both compensatory and punitive.  Furthermore, Hornsby requests court costs and legal fees.  (Id. at 6.)

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish

---

[1] Hornsby's Complaint named fourteen additional defendants.  (See ECF No. 1.)  However, these individuals were summarily dismissed without issuance and service of process on September 20, 2011.  (See ECF No. 22.)

[2] According to the report of the Emergency Department of the Grand Strand Regional Medical Center, Hornsby registered and was seen by the physician around 10:00 p.m. on June 7, 2011.  (ECF 46-5 at 4.)

PJG

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

PJG

**B.     Official Capacity Claims**

To the extent that Hornsby is suing the defendant in her official capacity, she is entitled to summary judgment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. art. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As an arm of the state, the defendant is entitled to sovereign immunity and cannot constitute a "person" under § 1983 in that capacity. See Will, 491 U.S. at 70-71; Gulledge v. Smart, 691 F. Supp. 947, 954-55 (D.S.C. 1988) (concluding that sheriffs and deputy sheriffs are agents of the state and cannot be sued in their official capacities). Accordingly, to the extent the defendant is sued in her official capacity, she is immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

**C.     Deliberate Indifference—Medical Treatment**

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. Hill v. Nicodemus, 979 F.2d 987,

991 (4th Cir. 1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." Estelle, 429 U.S. at 105. A prison official is deliberately indifferent if she has actual knowledge of a substantial risk of harm to a detainee and disregards that substantial risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994); see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). The government is required to provide medical care for incarcerated individuals. Estelle, 429 U.S. at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. Further, while the Constitution requires a prison to provide detainees with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A detainee's] mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Hornsby has failed to meet the requisite showing from which a reasonable jury could find deliberate indifference to his medical needs. Hornsby's chief allegation seemingly stems from his belief that he should have been allowed to see a specialist for further diagnosis of his ailment. (Pl.'s Resp. Opp'n Summ. J., ECF No. 53 at 1-2.) Hornsby alleges that the treating ER physician who examined him on June 7, 2011 instructed him to report to the Little River Medical Center for "further diagnosis by a specialist." (Id.) Hornsby claims that by failing to provide such, the

defendant demonstrated deliberate indifference to his medical needs by denying him "the furthered care prescribed by a doctor." (Id. at 7.) Moreover, Hornsby alleges that due to "waiting over seven weeks to begin the process of acquiring the appropriate [medical] records needed to appropriately provide meaningful care," and failing to properly examine Hornsby, the defendant denied him adequate medical care by improperly diagnosing his injury. (Id.)

In support of the responsive action taken by the medical staff and Defendant Hipp, specifically, the defendant has provided affidavit testimony from Major Joey Johnson, Deputy Director of the J. Reuben Long Detention Center, declaring that upon review of the medical records, Hornsby's medical requests "were timely addressed by the medical staff." (Johnson Aff. ¶ 3, ECF No. 46-2 at 1.) Further, in support of her motion for summary judgment, the defendant has provided Hornsby's medical records from the Grand Strand Regional Medical Center in addition to those from the JRLDC. The records show the ER physician's diagnosis to be that of a "strained" right wrist with instructions to follow up with the Little River Medical Center. (ECF No. 46-5 at 4-6.) There is nothing in the record supporting Hornsby's contention of a requirement or even recommendation for treatment of Hornsby by a specialist.

Even taking Hornsby's belief as accurate, however, as noted above, a prisoner's disagreement as to the type of care he should receive does not state a claim of deliberate indifference. See Wright, 766 F.2d at 849. Moreover, a review of the JRLDC records clearly show that the medical staff, including the defendant, was responsive to Hornsby's medical requests. Hornsby denoted that he was not in need of current medical attention during the medical/mental health screening upon his booking on June 9, 2011. (ECF No. 46-3 at 1.) He complained of wrist pain the following day during the health and mental status examination, however, and was placed on "sick call" for

evaluation by the defendant. (Id. at 5.) Though already on the "sick call" list, Hornsby submitted additional "medical request forms" on June 11 and June 16, 2011. (Id. at 4-5.) Each request was followed up by a consultation and assessment by a nurse. Hornsby was examined by the defendant on June 21, 2011 and prescribed Aleve for the discomfort. (Id. at 4.) Hornsby placed additional "medical requests" on July 10 and July 27, 2011, complaining of continued pain in his wrist. (ECF No. 46-4 at 3-4.) On July 13, the nurse's notes indicate that Hornsby was instructed that he could make an appointment to see a specialist at the Little River Medical Center, but that he would be financially liable for it. (ECF No. 46-3 at 6.) On July 16, the notes further indicate that it was communicated to Hornsby that a family member could make arrangements for him. (ECF No. 46-3 at 6.) Hornsby contends that he "alerted [the nurse] that he had no family that he could contact," and that "she assured him that she would handle the appointment."[3] (ECF No. 53 at 4.) Even taking Hornsby's account as true, the failure to provide an appointment with a specialist does not rise to the level of a constitutional violation. As stated above, Hornsby does not have a claim against the defendant merely because he disagrees with the course of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. At most, Hornsby's claims allege negligence or medical malpractice, which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792,

---

[3] Hornsby later appears to contradict this assertion when he states that his wife is scheduled to visit on the morning of August 18, 2011. (ECF No. 46-3 at 10.)



793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

To the extent that Hornsby is seeking to raise state law claims of negligence or medical malpractice, South Carolina law requires a plaintiff to file an affidavit of an expert witness with his complaint when asserting a claim of professional negligence against a professional licensed or registered with the State of South Carolina. S.C. Code Ann. § 15-36-100(B); Martasin v. Hilton Head Health Sys. L.P., 613 S.E.2d 795, 799 (S.C. Ct. App. 2005); Jernigan v. King, 440 S.E.2d 379, 381 (S.C. Ct. App. 1993). This requirement also includes nurses. See S.C. Code Ann. § 15-36-100(G). It is undisputed that Hornsby has failed to file an expert affidavit with his Complaint, and therefore he cannot proceed with a state law claim of negligence or medical malpractice against the Defendant.

**D.      Other Claims**

To the extent that Hornsby's Complaint may be construed to allege any other constitutional violations, the court finds that Hornsby has failed to plead sufficient facts to state a plausible claim. See Iqbal, 556 U.S. 662, 667-68 (2009). To the extent that Hornsby's Complaint could be construed to state any other claims arising under state law, the court should decline to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c).

**E.      Plaintiff's Motions**

Also pending before the court are Hornsby's motion to compel and motion "for subpoena law."

PJG

Hornsby's motion to compel seeks to compel responses to three subpoenas issued to the J. Rueben Long Detention Center and the Horry County Police Department.[4] In these subpoenas, Hornsby sought "medical records, forms, files, or grievance forms that specify [Hornsby] and statements made to and by [Hornsby]" from the J. Reuben Long Detention Center and "detailed and unedited transcripts of all audio recordings[] and visual images for [Hornsby's] transportation to the ML Brown building, interview at ML Brown building, and transport to [the] J. Reuben Long Detention Center" from the Horry County Police Department. (ECF No. 19; see also ECF Nos. 63 & 70.) Hornsby alleges that this information will show that his arm was bandaged during transport; that he complained of his injury during his arrest, interview, and transport; and that he was suffering and unable to complete simple tasks during the first ninety days at the detention center.[5] (ECF No. 28.) Even if the requested information would substantiate Hornsby's allegations of its contents, the defendant would nonetheless be entitled to summary judgment for the reasons discussed above. Accordingly, this motion is denied.

Hornsby previously sought access to the law library from J. Rueben Long Detention Center, which was denied as Hornsby was seeking injunctive relief from an entity that is not a party to this action. (See ECF Nos. 19 & 49.) Although Hornsby has entitled this motion "Motion for Subpoena Law," he is essentially again seeking to have Horry County provide him with legal authorities.

---

[4] The court observes that Hornsby appears to seek to compel this information, in part, from the Horry County Sheriff's Department; however, a subpoena was not issued to this entity. Moreover, to the extent that he seeks to hold Defendant Hipp in default for any alleged failure by the J. Rueben Long Detention Center and the Horry County Police Department to respond to the subpoenas, default is not an appropriate remedy.

[5] Hornsby also alleges that responses to these subpoenas will demonstrate that the detention center violated the Freedom of Information Act (ECF No. 28 at 3); however, such a claim is not properly before the court.



Because the relief sought by Hornsby cannot properly be obtained from Defendant Hipp or by subpoena, this motion is denied.

**RECOMMENDATION**

Hornsby is not entitled to the relief he seeks as he has failed to demonstrate that Defendant Hipp violated his constitutional rights. Accordingly, the court recommends that the defendant's motion for summary judgment be granted. (ECF No. 46)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 10, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).